**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

UNION HOME MORTGAGE CORP.,    )
                              )
    Plaintiff,                )
                              )   Case No. 23-21804
                              )
v.                            )
                              )
EMM LOANS, LLC                )
                              )
    Defendant.                )

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff Union Home Mortgage Corp. ("Union Home"), by counsel, for its Verified Complaint for Injunctive Relief and Damages against Defendant EMM Loans LLC ("EMM"), alleges and states as follows:

## BACKGROUND

1.    Union Home brings this action against EMM for misappropriation of Union Home's trade secrets and confidential information, tortiously interfering with Union Home's contract with its former employee, Christopher Fratelli, aiding and abetting Fratelli's breaches of his employee duty of loyalty, and unjust enrichment.

## PARTIES

2.    Union Home is in the business of providing homeowners and prospective home buyers with mortgage and refinance loan products.

3.    EMM is also in the business of providing homeowners and prospective home buyers with mortgage and refinance products and is a direct competitor of Union Home.

4.    From December 2015 to April 3, 2023, Fratelli was employed by Union Home as Branch Manager and loan officer, at its branch located in central Pennsylvania (the branch was

first located in Camp Hill and thereafter in Mechanicsburg, Pennsylvania).  In that role, Fratelli served as the face of Union Home to the Pennsylvania-based referral sources, prospects and customers with whom he cultivated relationships in his efforts to originate loans for Union Home.

5.     Starting in or around June 2022, EMM began soliciting Fratelli to leave Union Home and join EMM, and since April 3, 2023, EMM has employed Fratelli to, among other things, originate and generate loans for EMM in Pennsylvania.

## JURISDICTION AND VENUE

6.     Paragraphs 1-5 are incorporated herein by reference as if fully restated herein.

7.     This is an action seeking injunctive relief and damages against EMM based on its violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 and the Pennsylvania Uniform Trade Secrets Act, 12 Pa. Stat. and Cons. Stat. § 5301, *et seq.,* as well as EMM's tortious interference with Union Home's employment agreement with Fratelli, EMM's aiding and abetting Fratelli's breaches of his duty of loyalty to Union Home, EMM's unfair competition, and EMM's unjust enrichment.

8.     Union Home is an Ohio corporation with its principal place of business in Strongsville, Ohio.

9.     EMM is a New Jersey Corporation with its principal place of business in Cherry Hill, New Jersey.  EMM does business in Pennsylvania and, according to its website, has branches in Horsham, Lancaster, and Lebanon, Pennsylvania.

10.     Jurisdiction is proper in federal court pursuant to 28 U.S.C. § 1331 because one of Union Home's claims is based on a federal question. Specifically, Union Home has brought a cause of action under the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*

11.     The Court also has supplemental jurisdiction over Union Home's tort claims

pursuant to 28 U.S.C. § 1367.

12.     This Court also has diversity jurisdiction over all of Union Home's claims under 18. U.S.C. § 1332, as the parties are all citizens of different states and the amount in controversy exceeds $75,000.

13.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because EMM resides in New Jersey.

## **FACTUAL BACKGROUND**

### **Fratelli's Employment with and Contractual Obligations to Union Home**

14.     Paragraphs 1-13 are incorporated herein by reference as if fully restated herein.

15.     On or about December 14, 2015, Fratelli was hired by Union Home as a branch manager and loan officer for Union Home's central Pennsylvania branch, located in Camp Hill, Pennsylvania.  Fratelli and Union Home most recently entered into an Employee Agreement on or about July 7, 2022 ("Employee Agreement"), pursuant to which Fratelli served as branch manager and loan officer in Union Home's re-located central Pennsylvania branch in Mechanicsburg, Pennsylvania.  A true and accurate copy of the Employee Agreement is attached hereto as **Exhibit A**.

16.     Fratelli served as both a branch manager and producing loan officer for Union Home.  His duties for Union Home included generating and originating residential mortgage and refinancing loans for customers that would be issued by Union Home.  As a branch manager, Fratelli was also responsible for hiring, training, and directing the central Pennsylvania retail sales team to achieve growth and production goals while operating within Union Home's specific policies and procedures.

17.     Union Home invests significant time, effort, and resources into recruiting, training,

and retaining its branch managers and loan officers.  Fratelli, in particular, was a trusted, long-term employee of Union Home, who was given access to the goodwill Union Home has with its customers, prospective customers, and referral sources, as well as Union Home's confidential and trade secret information, including confidential information about Union Home's customers, prospective customers, and referral sources.

18.     As a branch manager and loan officer, Fratelli was in a position of trust with regard to the goodwill between Union Home and its customers, prospective customers, and referral sources.

19.     A substantial part of Fratelli's duties for Union Home involved developing, expanding, and maintaining relationships with referral sources (typically, realtors), prospective customers and borrowers for purposes of trying to originate loans for Union Home and establish pipelines for repeat business for Union Home.  Union Home facilitated and enabled those efforts by, among other things: compiling and maintaining detailed data on the customers, prospective customers, and referral sources with which Fratelli worked at Union Home, including, contact information, dates of contacts, and details of the nature, status, and amount of any loans requested or issued to prospects or customers; reimbursing Fratelli's team for marketing to referral sources, prospects and customers; providing training to Fratelli and his team on how to market to and maintain and expand relationships with referral sources, prospects and customers; and providing the loan products, processes, support, and value-added tools that Fratelli could offer to referral sources, prospects and customers.

20.     As a Union Home branch manager and loan officer, Fratelli acquired confidential, proprietary, and trade secret information regarding, among other things, Union Home's customers, prospective customers, and referral sources, as well as Union Home's sales and marketing

strategies, lending practices and processes, and risk tolerances.

21.     Union Home takes reasonable measures to keep this information secret and out of the hands of its competitors. Union Home does so, for example, by requiring employees in positions similar to Fratelli's to sign confidentiality agreements, password protecting its electronic resources, maintaining policies dictating strict information security, and training employees on the importance of information security.

22.     In his Union Home Employee Agreement, Fratelli agreed not to directly or indirectly use, disclose, divulge, reveal, report, publish, or transfer, for any purpose whatsoever, any of Union Home's Confidential Information. (Exhibit A, ¶ 6).

23.     Fratelli's Union Home Employee Agreement defined Confidential Information, in part, as "confidential or proprietary information or trade secrets of [Union Home], including but not limited to, written or electronic information: (i) disclosed to [Fratelli] or known by [Fratelli] as a result of [his] . . . employment, (ii) which is not generally known, and (iii) which relates to or concerns [Union Home]'s business, . . . customers, prospective customers, referral sources, pipelines, customer relationship management databases, suppliers, vendors, sales, marketing or finances," among other things.  (*Id.*).

24.     Furthermore, in the Employee Agreement, Fratelli agreed as follows:

> [Fratelli] agrees not to use any electronic resources of [Union Home] for any business purpose other than [Union Home]-approved business. Such electronic resources include, but are not limited to: devices, networks, email accounts, cloud storage, apps and software provided or made accessible by [Union Home]. Furthermore, [Fratelli] agrees to refrain from using any devices, networks, email accounts, cloud storage, apps and software that have not been provided, made accessible, or specifically approved by [Union Home] for [Union Home] business. By way of example, [Fratelli] agrees not to send information regarding [Union Home] customers or prospective customers to an external email account or store such information on a personal cloud storage account. This provision is in addition to and not in lieu of [Union Home] policies on this subject.

(*Id.,* at ¶ 19).

5

25.     Fratelli's Employee Agreement also provided:

[Fratelli] agrees they will not engage in Competitive Activity on behalf of a Competitive Entity in the Restricted Area during the Restricted Period of this Agreement, the "Restricted Period" shall be the period between the date this Agreement is executed and March 31, 2024; the "Restricted Area" shall mean any state in which [Fratelli] is legally able to originate or broker mortgages and has done so on behalf of [Union Home] in the thirty-six (36) months preceding the termination of [Fratelli's] employment with [Union Home]; a "Competitive Entity" shall be any entity that competes with [Union Home] in the home mortgage banking or brokering business; and "Competitive Activity" shall be acting in the same or similar capacity in which [Fratelli] worked for [Union Home] and shall include, but not be limited to performing the functions of a loan officer, such as by, directly or indirectly, originating or brokering mortgages for real estate located in the Restricted Area.

(Ex. A, ¶ 3).

26.     In the Employee Agreement, Fratelli also agreed not to directly or indirectly, solicit or divert (or attempt to solicit or divert) or accept competitive business from any customer or identified prospective customer of Union Home: (i) with whom Fratelli had contact; or (ii) about whom Fratelli obtained or had access to Confidential Information. (*Id.,* at ¶ 4).

27.     Fratelli's Employee Agreement also contained a Limited Non-Solicitation of Employees provision, stating: "During the Restricted Period and for two (2) years thereafter, [Fratelli] shall not, directly or indirectly, on behalf of themselves or a Competitive Entity, employ or seek to employ any person who is employed by [Union Home] or otherwise induce such person to leave his/her employment with [Union Home]. (*Id.*, at ¶ 5.)

28.     The Employee Agreement is a binding and enforceable contract between Union Home and Fratelli.

29.     Union Home performed its material obligations under the Employee Agreement.

30.     Fratelli owed and continues to owe legal and contractual obligations to Union Home pursuant to the Employee Agreement.

31.     While working for Union Home, Fratelli was licensed in Pennsylvania and Florida

and regularly cultivated relationships with referral sources and serviced borrowers and closed loans in those states on behalf of Union Home.

32.     The bulk of Fratelli's work for Union Home consisted of cultivating relationships and goodwill with referral sources, prospects, and borrowers in Pennsylvania.   In 2022, alone, Fratelli originated approximately $20 Million in loans for Union Home customers located in Pennsylvania.

33.     Unbeknownst to Union Home, starting in about June 2022, EMM began negotiating with Fratelli to leave Union Home and join EMM.   On April 3, 2023, Fratelli resigned from Union Home and immediately joined employment with EMM.

34.     Upon information and belief, by no later than April 4, 2023, Fratelli provided EMM with a copy of his Union Home Employee Agreement containing the provisions and restrictions set forth above.

35.     Fratelli's primary contact at EMM during his employment negotiations was EMM Director of Sales, Jeremy Frey, a high-ranking EMM executive headquartered in Harrisburg, Pennsylvania.

36.     In their negotiations, Frey and Fratelli strategized about ways that Fratelli might be able to "work around" any restrictions in his Union Home Employee Agreement.  Among other things, they discussed having Fratelli originate loans for EMM, but then running them through another EMM loan officer to conceal Fratelli's involvement with Fratelli still getting the bulk of the commissions for the loan origination.

37.     Going even further, Frey and Fratelli discussed EMM hiring one of the loan officer assistants on Fratelli's Union Home team, Anita Weikel, so that Fratelli could run loans through her to conceal his involvement.   In furtherance of that scheme, Fratelli told Weikel he was looking

to leave Union Home and join EMM, told her about a possible employment opportunity for her at EMM, discussed Weikel's preferred employment terms with Frey, introduced Weikel to Frey for purposes of pursuing that employment, and recommended to Union Home that Weikel be included in a reduction in force effort that Union Home was implementing to streamline its work force.

38.     As a result of Fratelli and Frey's scheme, Union Home terminated Weikel's employment on or about March 2, 2023, and EMM hired Weikel shortly thereafter.

39.     As another component of their scheme, Frey and Fratelli discussed Fratelli claiming that he intended to work out of Florida for EMM (rather than Pennsylvania) "for effect," presumably to help conceal that, after moving to EMM, Fratelli would actually still be working with the same Pennsylvania-based referral sources, prospects, and borrowers that had worked with for Union Home.

40.     In texts exchanged in early February 2023, Frey and Fratelli discussed how Fratelli might be able to "get[] around" any restrictions in his Union Home contract by "hanging [his] license in Florida."   Fratelli later stated to Frey, "[w]orst case scenario they sue me and I go to court … But no judge will go against me moving to another state and running my operation."

41.     In furtherance of their scheme, in March 2023, Fratelli told Union Home of his "desire to move back to Florida and originate out of Florida primarily," which lead to negotiations as to whether and how Union Home might accommodate Fratelli's wishes.

42.     When Fratelli subsequently announced his resignation from Union Home on April 3, 2023, he stated that he was accepting a Regional Sales Manager position (for a company he did not name) that that would "allow me the opportunity to plant my flag in Sarasota."

43.     For its part, after hiring Fratelli, EMM published a web page for the "Fratelli Team," which identifies Fratelli and Weikel as EMM's "Sarasota, Florida" branch.   On that web

page, EMM identifies Fratelli as a Regional Vice President in Sales and Weikel as the branch's "Mortgage Loan Originator."  A true and correct printout of that webpage is attached hereto as **Exhibit B.**

44.     On April 4, 2023 Union Home sent EMM a letter, enclosing a copy of Fratelli's Employee Agreement, and advising EMM that its employment of Fratelli may be causing him to violate the restrictive covenants in that agreement.

45.     In an April 12, 2023 letter, EMM's counsel responded by reiterating the narrative that Fratelli's work for EMM would be based in and focus on Florida, not Pennsylvania:

> Mr. Fratelli is licensed to originate loans in Florida and Pennsylvania. While at UHM he lived and worked in Pennsylvania. Prior to joining EMM, he moved to Florida. The UHM noncompete would prevent him from earning a living in his chosen profession in both places where he is licensed for two years. Not just in the community where he actually worked while at UHM, but also where he lives now, close to 1,000 miles away. There would certainly be nothing unfair to UHM in allowing Fratelli to pursue his sole means of employment in Florida so long as he abides by his confidentiality and non-solicitation agreements.

46.     EMM's and Fratelli's representations to the public and Union Home as to the work Fratelli would be doing, and the work that he has done, for EMM have proven to be false.

47.     Fratelli did not move to Florida following his resignation from Union Home.  He retained both his residences in Pennsylvania and in Florida and, since leaving Union Home, spends about the same amount of time in Pennsylvania as he did during his Union Home employment.

48.     The search history on Fratelli's former Union Home laptop reveals that, immediately prior to resigning his employment, Fratelli repeatedly searched for office furniture stores not in Florida, but in the Harrisburg, Pennsylvania area.  Fratelli currently does business for EMM out of an office space that he leases in Pennsylvania.

49.     Indeed, despite EMM publicly identifying the "Fratelli Team" as a "Sarasota, Florida" branch, all of the prospects and borrowers that Fratelli has serviced since joining EMM

have been located in Pennsylvania.

50.     According to EMM, Fratelli is servicing more than 150 customers as EMM's "Loan Officer," all of whom are located in Pennsylvania.  Of those customers, a dozen have closed loans with EMM for which EMM has paid Fratelli commissions.

51.     Worse, more than a dozen of the prospects and borrowers that Fratelli has serviced as EMM's Loan Officer are prospects or borrowers with whom Fratelli worked during his Union Home employment.

52.     During their employment negotiations—and while Fratelli was still employed by Union Home—Frey also assisted Fratelli in diverting at least two prospective borrowers from Union Home to EMM.   Among other things, Frey instructed Fratelli how to assist the prospects in submitting loan application materials to EMM and how the prospects could make their submissions more favorable to EMM.  EMM ultimately closed a loan with one of those customers, for which it paid Fratelli a commission.

53.     In addition to procuring Fratelli's breaches of the limited competition and non-solicitation provisions of his Union Home Employee Agreement, EMM has procured a breach of the confidentiality restrictions in that agreement and misappropriated Union Home's confidential and trade secret information.

54.     While still employed by Union Home, Fratelli took detailed confidential compilations of contact and other information concerning hundreds of prospects, borrowers, and referral sources with whom Fratelli worked during his approximately 8-year Union Home employment.  Fratelli downloaded copies of at least some of that compiled information from Union Home's secure, password protected customer relationship management system, Encompass, and maintained those compilations in a personal Dropbox account.  Notably, the compilations that

Fratelli took from Union Home's secure Encompass system contained footnotes stating they had been printed from Encompass.

55.     Union Home had compiled and maintained the information on the referral sources, prospects, and borrowers with whom Fratelli worked so that Union Home, through Fratelli and others, could more effectively and efficiently market to and cultivate relationships with those persons on behalf of Union Home.

56.     The confidential Union Home information Fratelli improperly took from Union Home and stored in personal accounts constitutes Union Home's confidential and trade secret information and is precisely the type of confidential and proprietary information Fratelli would need to facilitate the transfer of Union Home customers, prospective customers, and referral sources to EMM.

57.     After Fratelli joined EMM, Fratelli and EMM uploaded the detailed compilation of referral source information that Fratelli had taken from Union Home onto EMM's relationship-management system, Encompass.  This despite the fact that the compilation of referral source information Fratelli took from Union Home bore a footnote stating that it had been printed from Encompass. [1]

58.     As an EMM employee—and, upon information and belief, with the knowledge and assistance of others at EMM—Fratelli has used that Union Home compilation of referral source information to market to those referral sources on behalf of EMM.

## COUNT I:  VIOLATION OF DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836 *et seq.*

59.     Paragraphs 1-58 are incorporated herein by reference as if fully restated.

60.     Union Home owns trade secret information—including, without limit, detailed

---

[1] Notably, EMM also uses an Encompass system to store its confidential client and referral source information.

compilations of information concerning the referral sources that its loan officers use to originate loans—that derives independent economic value, actual or potential, from not being generally known or ascertainable except through proper means.

61.     Union Home gave Fratelli access to its trade secrets in confidence during his employment so that he could use that information in the context of that employment for the benefit of Union Home.

62.     Union Home takes and has taken reasonable measures to keep such information secret by, among other things, requiring employees to sign confidentiality agreements, password protecting its electronic resources, limiting access to such information, maintaining policies dictating strict information security, and training employees on the importance of information security.

63.     Fratelli knowingly acquired, disclosed, and/or used Union Home's trade secrets, including referral source information, via improper means and without Union Home's consent or permission and has done so willfully.

64.     EMM has knowingly acquired, disclosed, and/or used Union Home's trade secrets, including referral source information, via improper means, and/or has knowingly acquired, disclosed, and/or used Union Home's trade secrets knowing that Fratelli had acquired them by improper means, without Union Home's consent or permission and has done so willfully.

65.     EMM competes with Union Home in Pennsylvania and advertises multiple locations in Pennsylvania on its website.

66.     The referral sources with whom Fratelli interacted during his Union Home employment and about whom EMM has improperly used or misappropriated Union Home's trade secret information are located in several states, including in Pennsylvania.  The misappropriation of this

information would cause injury to Union Home in at least Pennsylvania.

67.     EMM's misappropriation of Union Home's trade secrets has caused Union Home to suffer monetary damages in an amount to be determined at trial, which damages include the costs and attorneys' fees that Union Home has incurred, and is continuing to incur, is pursuing litigation against Fratelli in the United States District Court for the District of Ohio to remedy the injuries and damages that Union Home is sustaining by reason of the breaches of contract induced by EMM.

68.     In addition, EMM's misappropriation of Union Home's trade secret information has caused, and is continuing to cause, irreparable injury to Union Home's goodwill, relationships, and reputation with and among the referral sources, prospects and customers that Fratelli was employed to develop and cultivate on behalf of Union Home.  Union Home has no adequate remedy at law to stop the damage that EMM's misappropriation has caused and will continue to cause by its unlawful conduct.

69.     Unless EMM is enjoined, this misconduct will continue, and Union Home will continue to suffer losses, including the retention, disclosure, and impermissible use of its trade secrets, and loss of customers, future revenue, and goodwill.

70.     As evidenced by EMM's various efforts to "get[] around" the restrictions in Fratelli's Union Home employment agreement and its misrepresentations concerning the location and nature of Fratelli's EMM employment, EMM's misappropriation of Union Home's trade secret information was willful and malicious, thus entitling Union Home to multiple damages pursuant to 18 U.S.C. § 1836(b)(3)(C).

**COUNT II:  VIOLATION OF PENNSYLVANIA UNIFORM TRADE SECRET ACT**
**(12 Pa. Stat. and Cons. Stat. § 5301, *et seq.*)**

71.     Paragraphs 1-70 are incorporated herein by reference as if fully restated herein.

72.     Union Home owns trade secret information—including, without limit, detailed compilations of information concerning the referral sources that its loan officers use to originate loans—that derives independent economic value, actual or potential, from not being generally known or ascertainable except through proper means.

73.     Union Home gave Fratelli access to its trade secrets in confidence during his employment so that he could use that information in the context of that employment for the benefit of Union Home.

74.     Union Home takes and has taken reasonable measures to keep such information secret by, among other things, requiring employees to sign confidentiality agreements, password protecting its electronic resources, limiting access to such information, maintaining policies dictating strict information security, and training employees on the importance of information security.

75.     Fratelli knowingly acquired, disclosed, and/or used Union Home's trade secrets, including referral source information, via improper means and without Union Home's consent or permission and has done so willfully.

76.     EMM has knowingly acquired, disclosed, and/or used Union Home's trade secrets, including referral source information, via improper means, and/or has knowingly acquired, disclosed, and/or used Union Home's trade secrets knowing that Fratelli had acquired them by improper means, without Union Home's consent or permission and has done so willfully.

77.     EMM competes with Union Home in Pennsylvania and advertises multiple locations in Pennsylvania on its website.

78.     The referral sources with whom Fratelli interacted during his Union Home employment and about whom EMM has improperly used or misappropriated Union Home's trade

secret information are located in several states, including in Pennsylvania. The misappropriation of this information would cause injury to Union Home in at least Pennsylvania.

79.     EMM's misappropriation of Union Home's trade secrets has caused Union Home to suffer monetary damages in an amount to be determined at trial.

80.     In addition, EMM's misappropriation of Union Home's confidential information has caused, and is continuing to cause, irreparable injury to Union Home's goodwill, relationships, and reputation with and among the referral sources, prospects and customers that Fratelli was employed to develop and cultivate on behalf of Union Home.  Union Home has no adequate remedy at law to stop the damage that EMM's misappropriation has caused and will continue to cause by its unlawful conduct.

81.     Unless EMM is enjoined, this misconduct will continue, and Union Home will continue to suffer losses, including the retention, disclosure, and impermissible use of its trade secrets, and loss of customers, future revenue, and goodwill.

82.     As evidenced by its various efforts to "get[] around" the restrictions in Fratelli's Union Home employment agreement and its misrepresentations concerning the location and nature of Fratelli's EMM employment, EMM's misappropriation of Union Home's trade secret information was willful and malicious, thus entitling Union Home to exemplary damages.

## COUNT III – TORTIOUS INTERFERENCE WITH CONTRACT

83.     Paragraphs 1-82 are incorporated herein by reference as if fully stated herein.

84.     Fratelli's Employee Agreement with Union Home constitutes a valid and binding contract.

85.     Through EMM's pre-employment negotiations with Fratelli, and certainly by no later than April 4, 2023 when Fratelli provided EMM with a copy of the Employee Agreement,

EMM knew of the Employee Agreement and the restrictive covenants therein, including without limit, the Limited Non-Compete provisions in Paragraph 3, the Limited Non-Solicitation of Customers provision in Paragraph 4 of that agreement, the Limited Non-Solicitation of Employees provision in Paragraph 5 of that agreement, and the Confidential Information provision in Paragraph 6 of that agreement.

86.    Notwithstanding its knowledge of the Employee Agreement, EMM has intentionally and maliciously, and with intent to harm Union Home, interfered with that contract by inducing and procuring breaches of that contract by Fratelli by, among other things:

(a)    Facilitating and assisting Fratelli in, and compensating Fratelli for, referring, originating and/or brokering loans for EMM in Pennsylvania, including to prospects and borrowers for whom Fratelli provided the same or similar services during the last 36 months of his employment with Union Home;

(b)    Facilitating and assisting Fratelli in, and compensating Fratelli for, soliciting or accepting business for EMM from customers and prospective customers of Union Home with whom Fratelli had contact and about whom he had access to confidential information within 36 months before his resignation from Union Home; Facilitating and assisting Fratelli in inducing another Union Home employee, Anita Weikel, to leave Union Home and join EMM; and

(c)    Facilitating and assisting Fratelli in using Union Home Confidential Information that Fratelli downloaded from Union Home's systems to market to referral sources with whom Fratelli developed or enhanced relationships in the course of his Union Home employment.

87.    EMM's tortious interference has caused and will continue to cause actual injury,

loss, and damages to Union Home, and continuation of these breaches will result, unless restrained, in immediate and irreparable injury, loss, and damage to Union Home.

88.    EMM intentional procurement of Fratelli's breaches of the Employment Agreement were malicious and without privilege or justification, as evidenced by EMM's various schemes to "work around" or "get[] around" the restrictions in Fratelli's Union Home Employee Agreement and EMM's false or misleading statements to Union Home and the public as to the location and nature of the work that Fratelli would be performing for EMM.

89.    EMM's intentional, malicious, wanton, and willful conduct, with a bad motive and with reckless indifference to Union Home's rights, entitles Union Home to punitive damages for EMM's tortious interference.

## COUNT IV – AIDING AND ABETTING BREACH OF DUTY OF LOYALTY

90.    Paragraphs 1-96 are incorporated herein by reference as if fully stated herein.

91.    Fratelli was a Union Home employee through the date of his resignation on April 3, 2023 and, as such, Fratelli owed Union Home a duty of loyalty until that date.

92.    Fratelli breached his duty of loyalty to Union Home by engaging in conduct that assisted Union Home's direct competitor, EMM, and otherwise engaging in contract contrary and detrimental to the interests of Union Home, including without limit, by referring prospective borrowers seeking mortgage or refinancing loans to EMM and assisting those prospective borrowers in submitting loan application information to EMM and by inducing Union Home employee, Anita Weikel, to leave Union Home for EMM.

93.    EMM knew that Fratelli was an employee of Union Home through April 23, 2022 and that, as such, he owed a duty of loyalty to Union Home.

94.    Notwithstanding that knowledge, by the conduct set forth herein, EMM provided

substantial assistance and encouragement to Fratelli in effecting his breaches of his duty of loyalty.

95.     As a direct and proximate result of EMM's aiding and abetting Union Home's breach of Fratelli's duty of loyalty, Union Home has suffered damages in an amount to be proven at trial.

96.     EMM's intentional, wanton, and willful conduct, with a bad motive and with reckless indifference to Union Home's rights, entitles Union Home to punitive damages for EMM's aiding and abetting Fratelli's breach of the duty of loyalty.

## <u>COUNT V – UNFAIR COMPETITION</u>

97.     Paragraphs 1-96 are incorporated herein by reference as if fully stated herein.

98.     As set forth herein, EMM has engaged in unfair competition by, among other things, misappropriating Union Home's trade secrets, misappropriating Union Home's other confidential business information, tortiously interfering with Union Home's contract with Fratelli, and aiding and abetting Fratelli's breach of his duty of loyalty.

99.     EMM's conduct has caused harm to Union Home's commercial relationships and good will with prospective customers, borrowers and referral sources.

100.     EMM's unfair competition has caused and will continue to cause actual injury, loss, and damages to Union Home, and continuation of EMM's conduct will result, unless restrained, in immediate and irreparable injury, loss, and damage to Union Home.

101.     EMM's intentional, wanton, and willful conduct, with a bad motive and with reckless indifference to Union Home's rights, entitles Union Home to punitive damages for EMM's unfair competition.

## COUNT IV – UNJUST ENRICHMENT

102.    Paragraphs 1-101 are incorporated herein by reference as if fully stated herein.

103.    By reason of the conduct described herein, a benefit has been conferred upon EMM, which benefit rightfully belongs to Union Home.

104.    EMM has knowledge of the benefit conferred upon it.

105.    Under the facts asserted herein, retention of the benefit conferred upon EMM by the misconduct of EMM and Fratelli would be unjust without paying full compensation for that benefit to Union Home.

## PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

106.    Paragraphs 1-105 are incorporated herein by reference as if fully restated herein.

107.    As a direct and proximate result of EMM's continuing misappropriation of Union Home's trade secrets, interference with the post-employment restrictions in Fratelli's Employee Agreement with Union Home, and unfair competition, Union Home has suffered, and will continue to suffer, irreparable harm in the loss of business opportunities as well as harm to its goodwill and confidential information in an amount that cannot be fully, completely, and adequately remedied at law.

108.    Without injunctive relief against EMM, EMM will continue to misuse Union Home's trade secrets and confidential information and will continue to facilitate Fratelli's breaches of the restrictive covenants in his Union Home Employee Agreement and to engage in other acts of unfair competition, thereby causing Union Home immediate and irreparable harm.  In contrast, no harm will accrue to EMM by entry of injunctive relief, as EMM never had the right to engage in the misconduct set forth herein.

109.    Injunctive relief is appropriate because protection and maintenance of Union

Home's proprietary information, including its trade secrets and confidential information, and protection of its goodwill is a vital and legitimate business concern. In the absence of injunctive relief, it is highly unlikely that Union Home will have the ability to precisely calculate the extent of the harm caused by EMM's actions.

110.    The public interest will not be harmed if an injunction is granted.

111.    Given EMM's malicious and willful conduct, any bond required to be posted by Union Home should be *de minimis.*

WHEREFORE, Union Home respectfully requests that the Court grant the following relief:

(a)     Issue a preliminary and then permanent injunction against EMM requiring EMM to return all, and abstain from using any, trade secret and confidential business information of Union Home that it has obtained from Fratelli, requiring EMM to prohibit Fratelli from directly or indirectly servicing on behalf of EMM any customers or prospective customers with whom Fratelli previously worked at Union Home, and requiring EMM to prohibit Fratelli from, directly or indirectly, engaging in competition against Union Home on behalf of EMM, as a branch manager, loan officer, or in any other loan originating capacity, in Pennsylvania or Florida.

(b)     Enter judgment in favor of Union Home and against EMM on all counts and award Union Home monetary damages in an amount to be determined at trial, including, but not limited to, compensatory and punitive damages, including Union Home's costs and attorneys' fees incurred in its litigation against Fratelli, as well as costs, interest, and reasonable attorneys' fees incurred in this action to the extent provided for by statute or common law;

(c)     Grant all other relief the Court deems just and proper in the circumstances.

Dated:  November 2, 2023

Respectfully submitted,

/s/  Regina S.E. Murphy
Regina S.E. Murphy (NJ Bar No. 031712010)
**BARNES & THORNBURG LLP**
222 Delaware Ave., Suite 1200
Wilmington, DE 19801
Phone: (302) 300-3475
Email: gigi.murphy@btlaw.com

***Attorneys for Plaintiff***
***Union Home Mortgage Corp.***

**<u>VERIFICATION</u>**

I, Bryan Wright, the Vice President of Retail Sales, verify under penalties of perjury that the foregoing facts and allegations are true and accurate to the best of my knowledge and belief.

Dated: November 1, 2023

*Bryan Wright*
_____