IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNION HOME MORTGAGE CORP., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No.: 1:23−cv−21804−KMW−AMD ) Magistrate Judge Ann Marie Donio ) |
| EMM LOANS, LLC, | ) ) |
| Defendant. | ) ) |

**DEFENDANT, EMM LOANS, LLC'S, MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF, UNION HOME MORTGAGE CORP.'S, MOTION TO COMPEL**

Defendant, EMM Loans, LLC ("EMM"), hereby opposes the Motion to Compel filed by Plaintiff, Union Home Mortgage Corp. ("UHM"), and in support thereof submits the following Memorandum of Law.

### I.   INTRODUCTION

UHM asks this Court to compel discovery that is unrelated to its remaining viable legal claims and ignores the findings of the District Court for the Northern District of Ohio (the "Ohio Court") in a related action docketed as, *Union Home Mortgage Corp. v. Fratelli*, Case No. 1:23-cv-857. [*See* Declaration of Zachary Glaser ("Glaser Dec."), Exh. A.] The Ohio Court's findings concerned the same set of facts, the same agreement, the same alleged trade secrets, the same legal issues under Ohio law, and the same alleged conduct underpinning the instant action. In that case, UHM asserted claims against its former employee, Christopher Fratelli ("Fratelli"), and requested a preliminary injunction that stopped him from competing against UHM in certain Pennsylvania and Florida counties, soliciting or accepting business from his referral sources, and using or disclosing Union Home's confidential and trade secret information in his employment at

EMM, all based on Fratelli's Employment Agreement with UHM. In this case, UHM asserted claims against EMM for misappropriation of trade secrets and confidential information, tortious interference with that same Fratelli Employment Agreement, aiding and abetting an alleged breach of Fratelli's duty of loyalty to UHM, and unjust enrichment. EMM denies these allegations, and the record makes clear that UHM's remaining theories of liability do not warrant the expansive and intrusive discovery it now demands.

Critical to this instant action is the level of deference this Court can and should show to the Ohio Court. Previously, this action was stayed to allow the Ohio Court to determine the enforceability of the restrictive covenants and the protectability of the information at issue under Ohio law. [Glaser Dec., Exh. B.] At that time, the parties and this Court agreed that the Ohio Court's preliminary injunction ruling would materially clarify the parties' rights and obligations in this litigation. For this reason, the parties to this case were ordered to report to the Court on the Ohio Court's preliminary injunction ruling as soon as it was handed down.

On February 27, 2025, the Ohio Court issued a comprehensive decision that determined that the restrictive covenant provisions in Fratelli's employment agreement with UHM were unenforceable as written, unreasonable in breadth, and unsupported by any legitimate business interest to justify broad enforcement. It declined to enforce the covenants as written or retroactively; instead imposing only narrow, forward-looking obligations effective from February 27, 2025, through February 27, 2026, and applicable only within specific Pennsylvania counties never mentioned in Fratelli's agreement. The Ohio Court also found that Fratelli's referral source list and the info regarding prospective UHM customers were not proven to be protectable trade secrets or confidential information.

Based on these findings, the only relevant timeframe for UHM's actions consisted of a thirty-three-day window between the date of the Ohio Court's Order, February 27, 2025, and March 31, 2025, Fratelli's last day of employment with EMM, during which Fratelli didn't close a single loan on behalf of EMM. [Glaser Dec., ¶4.]. Despite this, UHM now seeks discovery that sweeps well beyond the narrow period in which any enforceable obligation existed and demands loan files, internal communications, pricing strategies, borrower information, and other documents that have no relevance to the limited claims that remain viable after the Ohio ruling. UHM seeks, in effect, to undo the Ohio Court's determinations by broadening this case through discovery. But a party cannot use Rule 26 to resurrect positions that another federal court has already rejected.

Discovery in this action must be shaped by, and constrained by, the Ohio Court's findings, which this Court anticipated, awaited, and expressly relied on in structuring this litigation. Because UHM's discovery demands exceed the applicable boundaries, conflict with prior judicial determinations, seek irrelevant and disproportionate information, and impose undue burdens, the instant Motion should be denied in full.

## II.     BACKGROUND

### A.  Fratelli's Employment with UHM and EMM

UHM employed Fratelli as a mortgage loan officer in Pennsylvania from December 2015 until April 2023. [Glaser Dec., Exh. A, p. 1-4.] His employment was governed by a series of employment agreements, the most recent of which signed in July 2022, which contained a number of restrictive covenants and confidentiality provisions. [*Id.*] These provisions included clauses relating to non-solicitation, non-competition, and the protection of alleged confidential

information. UHM's claims against EMM in this matter stem from allegations that Fratelli breached those contractual obligations to UHM. [*Id.* at p. 2.]

Fratelli left UHM in April 2023, and he joined EMM immediately thereafter. [*Id.* at p. 4.] From the outset of his employment there, EMM demonstrated good faith and compliance with industry norms and its legal obligations by prohibiting Fratelli from contacting, soliciting, originating loans for, or refinancing with any individual with whom he had prior dealings at UHM. [Glaser Dec., Exh. C, p. 2.] And upon learning of Fratelli's more expansive restrictions from UHM, EMM further limited him to a passive, operational role that involved responding to referrals which, as the Ohio Court later found, did not constitute protectable information and could not form the basis for any trade-secret or confidentiality claim. [*Id.*] These referrals were often from long-standing, independent sources (including Fratelli's wife) that were not exclusive to UHM and not subject to stringent secrecy measures.

Not only did Fratelli function in a constrained capacity, but his employment with EMM was relatively brief. He resigned from the company effective March 31, 2025, having worked there for approximately 23 months. [*Id.*] Accordingly, after the Ohio Court issued its preliminary injunction order on February 27, 2025, imposing narrow, forward-looking restrictions, the only period during which Fratelli's conduct at EMM was subject to enforceable restrictions was the thirty-three-day window between February 27, 2025, and March 31, 2025.

EMM has already identified and disclosed all information related to the loans in which Fratelli played a role during the limited relevant period, in response to UHM's Interrogatory No. 14 in this action and through its production in the Ohio Court action. [Glaser Dec., Exh. D.] Beyond this production, there is simply no relevant loan-level activity to be produced, as discussed in full below.

4

### B. UHM's Related Actions in Ohio and New Jersey

This case is one of three parallel actions initiated by UHM, who also filed a lawsuit seeking damages and injunctive relief in the Northern District of Ohio, styled *Union Home Mortgage Corp. v. Fratelli*, Case No. 1:23-cv-00857 (the "Ohio action"), and intervened in Fratelli's personal bankruptcy in Pennsylvania. In the Ohio action, UHM sought a preliminary injunction enforcing the restrictive covenants against Fratelli and asserted claims against Fratelli arising from the same alleged trade secrets, referral sources, and customer relationships that form the basis of UHM's claims in this action against EMM.

Recognizing that the enforceability of the restrictive covenants and the protectability of the alleged trade secrets constituted threshold issues that would impact this case, the Court stayed this action in July 2024. [Glaser Dec., Exh. B.] In doing so, the Court agreed with the parties that the Ohio Court's rulings would clarify the enforceability of the restrictive covenants at issue and materially affect the parties' respective positions in this action.

The Ohio Court held a full preliminary injunction hearing, considered documentary evidence based on extensive discovery taken in the case, and made detailed findings. On February 27, 2025, the Ohio Court issued a thorough, reasoned decision that materially altered UHM's position and drastically limited the legal and factual scope of its claims. [Glaser Dec., Exh. A.] The Court granted UHM's preliminary injunction, but it did so on limited grounds because the restrictive covenants were overbroad, not reasonably limited to protect legitimate business interests, and not enforceable as written. Among other things, the Ohio Court determined:

- "Union Home ha[d] failed to meet its burden in demonstrating that [Fratelli's] Referral Source list is a protectable trade secret";

- "extending the non-solicitation of customers provision to 'identified prospective customers' about whom Fratelli obtained or had access to … is overly broad and disproportionately restricts competition";
- the restrictive covenants as a whole were unenforceable as drafted; and
- only prospective, forward-looking restrictions could be enforced within specific, enumerated Pennsylvania counties, with those restrictions imposed from February 27, 2025, through February 27, 2026.

[Glaser Dec., Exh. A, p. 13, 20, 23-24, 28-29.] While the Ohio Court crafted a new set of restrictions and tolled the restriction period during which Fratelli must comply, the Preliminary Injunction Memorandum Opinion severely curtailed UHM's ability to seek damages from EMM. Further, that opinion disposes of many of the issues about which UHM now seeks discovery, including the extensive requests targeting pre-injunction conduct, Fratelli's referral sources, and alleged trade secrets the Ohio Court found not to be protectable.

### C. UHM's Overly Expansive Discovery Requests

Despite the Ohio Court's clear findings and this Court's stay for the express purpose of awaiting those findings, UHM now pursues discovery far beyond what remains relevant to its remaining claims. It seeks:

- documents concerning any loan for which Fratelli was directly or indirectly involved with during his entire EMM employment, regardless of date or geography;
- communications among EMM personnel concerning referrals, customers, prospects, or business development; and

- documents relating to customers or loans generated from any of Fratelli's referral sources.

These demands conflict directly with the scope of discovery established by the Ohio Court's findings. The Ohio Court held that Fratelli's referral sources do not qualify as confidential or proprietary information. It determined that no enforceable duties applied to EMM prior to February 27, 2025, creating a relevancy window of thirty-three days from then until the end of Fratelli's EMM employment on March 31, 2025. Yet UHM continues to demand discovery into several months of records predating the preliminary injunction order, across every county and every loan product. This is simply not permissible under Federal Rule of Civil Procedure 26.

### III. ARGUMENT

#### A. The Ohio Court's Determinations as to the Enforceability of Fratelli's Restrictive Covenants Should Control the Scope of Discovery Here

##### 1. Collateral Estoppel Applies Because the Ohio Court Actually and Necessarily Decided the Issues UHM Seeks to Re-Litigate Through Discovery in this Case

Under the doctrine of collateral estoppel, also known as issue preclusion, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). This doctrine "relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication." *Id.* at 94. It applies to issues "of evidentiary fact, of 'ultimate fact' (i.e. the application of law to fact), or of law." *Witkowski v. Welch*, 173 F.3d 192, 199 (3d Cir. 1999)(*quoting* Restatement (Second) of Judgments, § 27 cmt. c (1982) (cleaned up)).

To invoke collateral estoppel, the following factors must be satisfied: (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issues was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding. *Caver v. City of Trenton*, 420 F.3d 243, 259 (3d Cir. 2005); *Mitchell v. Vincente*, No. 12-03394, 2014 WL 1092760, at *5-6 (D.N.J. March 18, 2014). All these elements are easily satisfied here.

In this case, the discovery issues UHM now pursues, including loan files for all Pennsylvania loans Fratelli touched at EMM and every communication relating to Fratelli's referral sources, are the same issues that the Ohio Court already addressed after an evidentiary hearing on UHM's requested preliminary injunction. That Court determined that Fratelli's referral sources were not trade secrets, there was no evidence of actual misappropriation, the non-compete and non-solicitation covenants were unenforceable as written, and only limited, prospective restrictions could apply. Moreover, those restrictions were confined to certain, enumerated Pennsylvania counties and effective prospectively from the date of the Court's Order, February 27, 2025, through February 27, 2026. These rulings directly foreclose the broad discovery UHM now demands, which targets the very conduct and materials the Ohio Court deemed could not support valid legal claims.

Not only were these issues raised in the Ohio Court, but they were vigorously litigated and necessary for the issuance of the Court's decision. UHM sought extraordinary injunctive relief, conducted discovery, and the parties submitted documentary evidence, briefed the relevant issues extensively, and argued them at length at an evidentiary hearing. The Ohio Court then

8

made explicit and detailed factual findings regarding the nature of the referral sources, the reasonableness of the employment restrictive covenants at issue, and the absence of evidence of actual misappropriation. It then issued a preliminary injunction enforcing only the portions of Fratelli's covenants that it found to be reasonable and enforceable. It could not have crafted an injunction without first deciding what interests were protectable, what covenants were enforceable, and what conduct fell within their scope. "An issue is 'actually litigated' when it is properly raised … and is submitted for determination and is determined." *Taylor v. S.T. Goods Ins., Inc.*, No. 10-4258, 2012 WL 83650, at *4 (D.N.J. Jan. 11, 2012) (*citing O'Leary v. Liberty Mutual Co.*, 923 F.2d 1062, 1066 (3d Cir. 1991)). And "for purposes of issue preclusion … 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." *Feng v. Peng*, 516 B.R. 26, 46 (D.N.J. 2014)("In determining whether the resolution was sufficiently firm, the factors to consider include whether the parties were fully heard, whether a reasoned opinion was filed, and whether that decision could have been, or actually was, appealed."). Based on the above discussion, the Ohio Court's findings therefore clearly meet the requirements for collateral estoppel and weigh in favor of the requested relief.

      Finally, UHM was fully represented and had every incentive to litigate the issues in the Ohio Court to the fullest extent possible because it is undisputed that it was the Plaintiff in the Ohio action and represented by counsel therein. It thus had a complete and fair opportunity to advocate for the precise theories it now seeks to revive here through its discovery, and this element is indisputably satisfied.

      Therefore, because UHM fully litigated the enforceability and protectability issues in Ohio, and the Ohio Court rendered a well-reasoned decision with detailed factual findings that

apply to the issues here, collateral estoppel bars it from seeking through discovery what it already lost on merit there.

### 2. Even if Collateral Estoppel Does Not Strictly Apply, This Court Should Exercise Its Discretion to Defer to the Ohio Court's Findings

Even if this Court were to conclude that collateral estoppel does not formally preclude UHM's position, the result should still be the same, with deference being given to the Ohio Court's findings. Indeed, this Court expressly stayed the matter to await the Ohio Court's rulings because those rulings were expected to, and did, determine the enforceability of UHM's restrictive covenants, the protectability of the alleged confidential information, and the boundaries of the parties' respective obligations. Having already structured this case around the Ohio Court's expected findings, this Court should now enforce those findings to prevent inconsistent rulings, duplicative litigation, and inefficient re-litigation of issues already resolved.

"Although the federal courts have adopted liberal discovery rules, district courts, nevertheless, are empowered with 'broad discretion to manage discovery'" to ensure efficiency of their dockets. *Thompson v. Glenmede Trust Co.*, 1995 WL 752422, n. 4 (E.D. Pa. Dec. 19, 1995) (*quoting Sempier v. Johnson & Higgins*, 45 F.3d 724, 734 (3d Cir. 1995)). And here, the only efficient path forward would be to provide deference to the Ohio Court's findings on the relevant issues, which would promote uniformity, avoid forum shopping, conserve judicial resources, and prevent the possibility that two federal courts may issue incompatible rulings regarding the same operative facts.

The Ohio Court's decision comprehensively addressed the protectability of referral sources, the enforceability of restrictive covenants, the appropriate geographic and temporal scope of any restriction, and the absence of evidence of actual misappropriation. It also established that the only relevant time period and geographic scope were from February 27,

10

2025, through March 31, 2025, in certain, enumerated Pennsylvania counties, which is the only time period in which Fratelli's or EMM's actions could be subject to any enforceable covenant. That ruling was precisely what this Court was waiting for when it stayed this action. To now disregard the Ohio Court's rulings would undermine the purpose of the stay and create the risk of conflicting federal decisions concerning the same employment agreement, the same alleged confidential information, and the same alleged conduct.

Furthermore, discretionary deference is warranted here because UHM obtained much, if not all, of the discovery it seeks here through the Ohio action. EMM produced significant documentation relating to loans in which Fratelli was involved and Fratelli's communications while an EMM employee in that case, and the Ohio Court was able to review that material before issuing its injunction order. UHM cannot now use this action to circumvent or relitigate limitations the Ohio Court imposed after being able to review the same categories of information.

Finally, deferring to the Ohio Court's findings harmonizes with Federal Rule of Civil Procedure 26, which limits discovery to materials relevant to a party's claims and proportional to the needs of the case. As discussed below, the Ohio Court's determinations define the relevant factual universe here: post-February 27, 2025, conduct relating to actual UHM customers within specific counties. EMM has already produced the loan information for that limited period in response to UHM's Interrogatory No. 14, and UHM cannot expand the scope of discovery by ignoring the controlling findings of another federal court.

For all these reasons, even if collateral estoppel does not control the outcome, the Court should exercise its discretion to adopt and apply the Ohio Court's determinations as the governing framework for discovery in this case.

### B. EMM Has Already Produced All Relevant Information, and UHM's Remaining Requests are Irrelevant to Any Viable Claim in This Case

Once the Ohio Court's findings are applied to UHM's claims in this case, it becomes clear there is nothing left for the Court to compel. EMM already produced all information relevant to the limited, enforceable obligations recognized by the Ohio Court, and every additional category of discovery UHM demands falls entirely outside the scope of any remaining viable legal theory in this case.

Discovery in federal court is limited to information "relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1). Relevance does not turn on theoretical possibilities; it requires a showing that the information sought could affect a viable claim in the case. *See Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000) (holding that information is discoverable only if it "bears on, or [sic] reasonably could lead to other matter that could bear on," a claim that is legally and factually viable). When an element of a claim has already been adjudicated adversely to a party, discovery into that element is necessarily irrelevant. *See Robbins v. Camden City Bd. of Educ.*, 105 F.R.D. 49, 55 (D.N.J. 1985) ("Discovery should be tailored to the issues involved in the particular case."). Each of UHM's four claims are drastically limited as a matter of law in light of the Ohio Court's findings, and discovery into unenforceable theories simply cannot be compelled.

Here, UHM's unjust enrichment and misappropriation claims require protected information, and its tortious interference and aiding and abetting claims require enforceable contractual provisions. *See, e.g., Ho-Ho-Kus, Inc. v. Sucharski*, 2023 WL 7403539 (D.N.J. Nov. 9, 2023) (requiring a misappropriation plaintiff to "sufficiently identify the information it claims as a trade secret" and "allege facts supporting the assertion that the information is indeed protectable as such"); *Commerce Ins. Servs. Inc. v. Szczurek*, No. 05-3536, 2006 WL 8457151, at

12

\*8 (D.N.J. Jan. 6, 2006) ("It is axiomatic that a claim for interference with existing contracts requires a showing of existing contracts"); *Duffy v. Charles Schwab & Co., Inc.*, 123 F.Supp.2d 802, 815 (D.N.J. 2000) ("To establish unjust enrichment, a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust."); *Avataa USA, LLC v. Yaminsky*, 2025 WL 892716, at \*8 (March 24, 2025) ("It is well-settled law that when a plaintiff brings a[n] … aiding and abetting claim … he or she must allege a viable underlying tort."); *Anglin v. Anglin*, 2024 WL 3355303, at \*13 (D.N.J. July 9, 2024) ("To establish a claim for breach of fiduciary duty, a plaintiff must show '(1) the defendant had a duty to the plaintiff, (2) the duty was breached, (3) injury to plaintiff occurred as a result of the breach, and (4) the defendant caused that injury."). But the Ohio Court's findings have drastically altered and constrained the information that could be protected and contractual provisions that could be enforced.

After a contested evidentiary hearing, the Ohio held that: (1) UHM "failed to meet its burden of demonstrating that [Fratelli's] Referral Source List is a protectable trade secret"; (2) Fratelli's restrictive covenants were overbroad and unenforceable as written, providing restraints "greater than necessary" to protect UHM's interests; (3) Fratelli's non-compete provision's geographic scope was unreasonable and required substantial narrowing; (4) Fratelli's non-solicitation provision had to be rewritten to apply only to actual UHM customers with whom Fratelli had contact or confidential information, not prospects, referral sources, or general market participants. [Exh. A, at p. 13, 20, 23-24, 28-29]. Crucially, none of these restrictions were applied retroactively; they applied from February 27, 2025, through February 27, 2026, and were further limited to March 31, 2025, when Fratelli left EMM's employ as of that date.

13

Applying those limitations, the only possible period during which EMM and Fratelli could have impacted an enforceable restriction is the 33-day window between February 27, 2025, and March 31, 2025, the date Fratelli left EMM. Only loan activity, customer interactions, or referral communications occurring within that narrow timeframe, and only within the specific Pennsylvania counties identified in the Ohio injunction, could possibly bear on any remaining claim. And EMM has already produced all of it. As confirmed in EMM's response to Interrogatory No. 14, Fratelli closed no loans during the restricted period, and EMM has disclosed all information relating to the handful of loans in which he played any limited, tangential role. There is literally nothing else in this restricted period for EMM to produce.

UHM's continued assertion that additional relevant discovery must exist is incompatible with the Ohio Court's ruling and legally unsustainable. Since EMM has produced all the information that remains legally relevant in this case, UHM's instant Motion to Compel should be denied.

### C. EMM is Not Asking the Court for a Summary Judgment Ruling or Absolution

Finally, UHM tries to argue that EMM is trying to use the instant discovery dispute to seek a premature summary judgment ruling in this case, and it asks the Court to defer ruling on the enforceability of Fratelli's restrictive covenants or the protectability of the alleged trade secrets at issue until after discovery has concluded. This argument reflects a fundamental misunderstanding of EMM's argument here. EMM is not asking the Court to make determinations regarding ultimate liability in this case. It is simply asking that the Court honor and enforce factual findings and legal conclusions that another federal court has already made after a full evidentiary process, for which this Court purposefully awaited before proceeding.

This distinction is critical. EMM does not seek the ultimate resolution of UHM's claims under Rule 56. It acknowledges that, as a whole, Fratelli's Employment Agreement constituted a valid, binding agreement between him and UHM, and it does not dispute that UHM may be able to pursue claims against EMM to the extent it pursues them under enforceable contractual provisions. The issue here is that UHM is trying to pursue discovery into matters the Ohio Court has already found cannot support any claim it asserts herein because those matters are legally irrelevant and factually untenable.

The Federal Rules do not allow a party to demand discovery into categorically irrelevant matters simply because it believes the information could support a claim. Rule 26(b)(1) expressly requires discovery to be tied to "a claim or defense," and this Court has further made clear that, "[d]iscovery should be tailored to the issues involved in the particular case." *Robbins*, 105 F.R.D. at 55. The Ohio Court's direct findings as to the enforceability of Fratelli's Employment Agreement provisions and protectability of categories of information as trade secrets and confidential information have now defined the claims and defenses that remain viable in this action, and which categories of conduct and information cannot form the basis for any liability. EMM is not asking the Court to evaluate the merits of any claim, just to enforce the necessary consequences of the Ohio Court's detailed findings.

In sum, this is not a request for premature summary judgment. It is a request that the Court enforce the explicit boundaries created by a prior federal ruling, which this Court chose to wait for. Under Rule 26, the Court must restrict discovery to matters that are relevant to the viable legal claims before it. UHM's instant demands exceed those boundaries, and thus, the instant Motion should be denied in full.

## IV. CONCLUSION

The Ohio Court's findings were the result of a full, contested, and comprehensive preliminary injunction proceeding. This Court stayed the matter to await these findings, recognizing that they would define the enforceability of the restrictive covenants and the protectability of the alleged trade secrets at issue. The findings have now been issued, and they are unequivocal. The restrictive covenants are unenforceable as drafted, enforceable only prospectively in a limited geographic area, and incapable of supporting claims premised on retroactive conduct. And neither UHM prospective customers, nor Fratelli's referral sources, were found to be protectable in the fashion UHM claims.

UHM nevertheless seeks discovery into many months of loan files, customer identities, pricing models, lead lists, and communication histories that fall outside the time periods, geographies, and subject matters recognized by the Ohio Court as relevant. UHM's discovery demands would require an enormous and disproportionate review and redaction exercise, exposing sensitive financial information with no corresponding benefit to any viable claim in this case.

Because UHM's requested discovery violates the limitations of the Federal Rules of Civil Procedure, seeks irrelevant information, and disregards the Ohio Courts findings, EMM respectfully requests that the Court deny UHM's Motion to Compel in full.

**SPECTOR GADON ROSEN VINCI, P.C.**

BY:   */s/ Zachary C. Glaser*
Zachary C. Glaser, Esquire
Adam A. Filbert
130 N. 18th St., Suite 1800
Philadelphia, PA  19103
215.241.8872/215.531.9120 (FAX)
zglaser@sgrvlaw.com / afilbert@sgrvlaw.com

December 1, 2025                    *Attorney for EMM Loans, LLC*